UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UPSTATE NEW YORK ENGINEERS
HEALTH FUND, *et al*.,

         Plaintiffs,

  -against-            5:15-CV-0903 (LEK/TWD)

SOUTH BUFFALO ELECTRIC, INC.,
*et al*.,

         Defendants.

## MEMORANDUM-DECISION AND ORDER

**I. INTRODUCTION**

On July 23, 2015, Plaintiffs Upstate New York Engineers Health Fund, Upstate New York Engineers Pension Fund, Upstate New York Engineers S.U.B. Fund, Upstate New York Engineers Training Fund, Operating Engineers Local 17 Training Fund, Central Pension Fund of the International Union of Operating Engineers and Participating Employers (collectively, the "Funds"), and the International Union of Operating Engineers, Local Union No. 17 (the "Union") filed this action seeking monetary and injunctive relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. Dkt. No. 1 ("Complaint"). Presently before the Court are two separate motions for default judgment submitted by Plaintiffs. Dkt. Nos. 20 ("First Default Motion"), 20-1 ("First Memorandum"), 24 ("Second Default Motion"), 24-1 ("Second Memorandum").[1] For the following reasons, the motions are granted in part and denied in part.

---

[1] Plaintiffs also filed an amended notice of motion for the Second Default Motion. Dkt. No. 25.

## II. BACKGROUND

Defendant South Buffalo Electric, Inc., is a New York corporation, and defendants Arnold A. and Arnold J. Paolini (the "Paolinis") are officers and shareholders of South Buffalo. Compl. ¶¶ 15–16. Plaintiffs allege that South Buffalo failed to pay contributions and deductions as required by three collective bargaining agreements ("CBAs"). Id. ¶¶ 23–25, 30. Plaintiffs filed their Complaint on July 23, 2015, and Defendants did not answer or otherwise move with respect to the Complaint. On October 6, 2015, Plaintiffs requested entry of default as to all Defendants, Dkt. No. 7, which the Clerk of the Court granted on October 7, 2015, Dkt. No. 9. After submitting a series of extension requests, Dkt. Nos. 10, 12, 14, 16, 18, that were granted by the Court, Dkt. Nos. 11, 13, 15, 17, 19, Plaintiffs filed a motion for default judgment under Rule 55 of the Federal Rules of Civil Procedure on August 26, 2016. First Default Mot.

Plaintiffs' First Default Motion was filed against the Paolinis but not South Buffalo, but Plaintiffs filed a second motion for default judgment as to South Buffalo on November 1, 2016. Second Default Mot. Defendants have not opposed either of the motions for default judgment or otherwise appeared in this action.

## III. LEGAL STANDARD

"Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." Elec. Creations Corp. v. Gigahertz, Inc., No. 12-CV-1423, 2013 WL 3229125, at *3 (N.D.N.Y. June 25, 2013) (quoting Robertson v. Doe, No. 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008)). "First, under Rule 55(a), when a party fails to plead or otherwise defend . . . the clerk must enter the party's default." Id. Second, under Federal Rule of Civil Procedure 55(b)(2), "the party seeking

2

default judgment is required to present its application for entry of judgment to the court." Id.

"When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability." Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc., 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) (citing Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)). "While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974); accord Bravado Int'l, 655 F. Supp. 2d at 189. "[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought." Robertson, 2008 WL 2519894, at *3. "The burden is on the plaintiff to establish its entitlement to recovery." Bravado Int'l, 655 F. Supp. 2d at 189. "While 'the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing.'" Id. at 190.

Under Local Rule 55.2(b), the moving party must submit with its motion for default judgment: (1) a clerk's certificate of entry of default, (2) a proposed form of default judgment, (3) a copy of the pleading to which no response has been made, and (4) an affidavit. L.R. 55.2(b). The affidavit must set forth that: (1) the party against whom judgment is sought is not an infant, incompetent, or in military service; (2) the party against whom judgment is sought has defaulted in appearance in the action; (3) service was properly effected under Federal Rule of Civil Procedure 4; (4) the amount sought is justly due and owing, and no part has been paid; and (5)

the disbursements sought to be taxed have been made in the action or will necessarily be made or incurred. L.R. 55.2(a).

**IV.    DISCUSSION**

Defendants have failed to appear in this action or to answer Plaintiffs' Complaint, despite having been duly served. Dkt. No. 8. Because Defendants have failed to appear, and because the Clerk has made an entry of default, all relevant and well-pleaded factual allegations in Plaintiffs' Complaint are presumed to be accurate.

Under ERISA, employers that are obligated to make contributions to multiemployer benefit plans must do so under the terms of such plans. 29 U.S.C. § 1145. Here, Plaintiffs have sufficiently alleged that South Buffalo is an employer required to make contributions to the employee benefit plans under the terms of three CBAs, and that it has failed to do so. Compl. ¶¶ 23, 25, 30–32. Under the CBAs, South Buffalo was also required to deduct stipulated amounts from employees' wages and pay those deductions to the Union. Id. ¶ 27. If an employer fails to make the required contributions and deductions, ERISA provides for statutory damages as follows:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorneys' fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Here, Plaintiffs request contributions, deductions, interest, liquidated

damages, audit fees, and attorneys' fees for a total amount of $351,563.06 against South Buffalo. Second Mem. at 9. Plaintiffs also request contributions, interest, audit fees, and attorneys fees and costs for a total amount of $199,647.49 against the Paolinis. First Mem. at 8.

**A. South Buffalo Electric, Inc.**

  1. *Damages Under ERISA*

a. Contributions and Deductions

At all times relevant to this action, South Buffalo and Plaintiffs were parties to three CBAs that required South Buffalo to pay contributions and deductions to Plaintiffs for each hour worked by employees covered by the CBAs. Compl. ¶¶ 23–26. In their Complaint, Plaintiffs alleged that South Buffalo owed $141,988.49 in unpaid contributions and deductions for the period of July 2014 through March 2015. Id. ¶ 30. But following commencement of this action, Plaintiffs commissioned an audit showing that South Buffalo owed $170,709.35 in contributions and deductions for the period of January 1, 2012, through December 31, 2015. Second Mem. at 8; Dkt. No. 20-10 ("Dooley Affidavit") ¶ 11. Additionally, a June 17, 2016 audit revealed that South Buffalo owed an additional $76,755.96 in unpaid contributions and deductions for the period of January 1, 2016, through May 31, 2016. Dooley Aff. ¶ 12. Finally, remittance reports for June 2016 through September 2016 show that South Buffalo failed to remit $29,606.82 in contributions and deductions during that period, and it untimely paid another $22,586.73 in contributions and deductions. Second Mem. at 8.[2] Since the filing of this action, Defendants have

---

[2] Because the First Default Motion was filed in August 2016, it does not include a request for damages for withheld contributions and deductions for the period of June 2016 through September 2016. But the Court treats that request for withheld payments—which was contained in the Second Default Motion—as applicable to the Paolinis as well as South Buffalo.

5

paid $76,892.07 in partial satisfaction of their $277,068.14 debt. Id. Thus, Plaintiffs now seek $200,176.07 in unpaid contributions and deductions, despite only demanding $141,988.49 in the Complaint.

The question, then, is whether Plaintiffs are entitled to a default judgment of a larger sum than the amount alleged in the Complaint. According to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." The purpose of this rule is that "the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action." Trs. of Plumbers & Pipefitters Nat'l Pension Fund. v. Daniel Weintraub & Assocs., Inc., No. 04-CV-2611, 2007 WL 4125453, at *5 (E.D.N.Y. Nov. 16, 2007) (quoting King v. STL Consulting, LLC, No. 05-CV-2719, 2006 WL 3335115, at *4 (E.D.N.Y. Oct. 3, 2006)). Despite this rule, some courts have allowed plaintiffs in ERISA default cases to seek damages that accrue during the pendency of an action where notice is given in the complaint. Id. (collecting cases). Because Plaintiffs gave such notice in this case, Compl. ¶ 79, they may seek damages that have accrued since this action was filed.

Plaintiffs may not, however, seek additional damages for the time period before this action was filed. Therefore, Plaintiffs are limited to the $141,988.49 in unpaid contributions and deductions for the period of July 2014 through March 2015 that they alleged in the Complaint. They may not now demand $170,709.35 in contributions and deductions for the period of January 1, 2012, through December 31, 2015. Accordingly, the Court awards Plaintiffs $171,459.20 in delinquent contributions and deductions ($141,988.49 for July 2014 through March 2015, plus $76,755.96 for January 2016 through May 2016, plus $29,606.82 for June

6

2016 through September 2016, minus the $76,892.07 paid by Defendants).[3]

### b. Interest on Unpaid Contributions

Plaintiffs are entitled to receive interest on all delinquent contributions, which "shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g)(2). Under the CBAs, South Buffalo is liable for interest on unpaid contributions at the following rates: the Upstate New York Engineers Health Fund, Upstate New York Engineers Pension Fund, Upstate New York Engineers S.U.B. Fund, and Upstate New York Engineers Training Fund (the "Upstate Funds") at two percent per month; the Operating Engineers Local 17 Training Fund at a rate prescribed by ERISA; the Central Pension Fund of the International Union of Operating Engineers and Participating Employers at nine percent per annum. Dkt. No. 24-3 ("Second St. Fleur Affidavit") ¶ 7. South Buffalo is also liable for interest on unpaid dues to the Union at a rate of nine percent per annum. Id.

Plaintiffs calculate that South Buffalo owes $43,359.10 in interest through November 1, 2016. Second Mem. at 9.[4] Because that sum includes interest on unpaid contributions that

---

[3] Plaintiffs are also entitled to unpaid contributions and deductions from July 23, 2015, when the Complaint was filed, through December 2015 for the reasons outlined above. However, the Court is not able to determine the amount of unpaid contributions and deductions that accrued during that time period based on Plaintiffs' submissions. Therefore, within twenty-eight (28) days of this Memorandum-Decision and Order, Plaintiffs may file a motion to amend the judgment to include unpaid contributions and deductions for July 23, 2015, through December 2015. Plaintiffs must provide documentation supporting their request.

[4] The Court notes that Plaintiffs' Second Default Motion is not consistent in its calculation of the interest owed by South Buffalo. The memorandum of law asserts that South Buffalo owes $43,359.10 in interest through November 1, 2016, Second Mem. at 9, but the affidavit of Cheryl St. Fleur, a legal assistant at Blitman & King LLP, states that South Buffalo owes $46,926.64 in interest through November 1, 2016, Second St. Fleur Aff. ¶ 21.

Plaintiffs are not entitled to in this action—in particular, unpaid contributions that were not alleged in the Complaint but were withheld before the filing of the Complaint—Plaintiffs's calculation is too high. Based on the information provided in the Second Default Motion, the Court cannot determine the appropriate amount of interest. Therefore, the Court does not grant interest against South Buffalo at this time. Plaintiffs may, however, file a motion to amend this judgment within twenty-eight (28) days to include interest against South Buffalo, and Plaintiffs must provide documentation supporting their calculation of interest.

### c. Liquidated Damages

Under 29 U.S.C. § 1132(g)(2)(C), Plaintiffs are entitled to liquidated damages in an amount equal to the greater of the interest on the unpaid contributions or twenty percent of the unpaid contributions. Plaintiffs, however, ask for an amount that is greater than either their proposed interest on unpaid contributions or twenty percent of the unpaid contributions requested in the Second Default Motion. Plaintiffs provide no explanation for this discrepancy. Moreover, Plaintiffs' Second Default Motion is inconsistent in the amount of liquidated damages that it seeks—the memorandum of law claims that South Buffalo owes $63,511.86 in liquidated damages, Second Mem. at 9, while the Second St. Fleur Affidavit states that South Buffalo owes $70,888.82 in liquidated damages, Second St. Fleur Aff. ¶ 21. As the Court can find no reason to grant either of those amounts, and Plaintiffs do not provide any, the Court declines to award liquidated damages at this time. Plaintiffs may, however, file a motion to amend this judgment within twenty-eight (28) days to include liquidated damages against South Buffalo, and they must explain how they arrived at the requested amount.

### d. Attorneys' Fees and Costs

8

Under 29 U.S.C. § 1132(g)(2)(D), Plaintiffs are entitled to recoup reasonable attorneys' fees and costs. Courts in the Second Circuit employ a "presumptively reasonable fee" standard to determine the amount of attorneys' fees to award. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 184 (2d Cir. 2008). To determine what is a presumptively reasonable fee, a court assesses "case-specific considerations at the outset, factoring them into its determination of a reasonable hourly rate for the attorneys' work," which is then multiplied by a reasonable number of hours expended by counsel. McDaniel v. County of Schenectady, 595 F.3d 411, 420 (2d Cir. 2010).

Here, Plaintiffs seek $27,336.78 in attorneys' fees and costs through October 25, 2016, and their fees are based on an hourly rate of $291–$300 for attorneys and $160–$165 for paralegals. Second Mem. at 9; Dkt. No. 24-2 ("Second Clark Affidavit") at 65.[5] The Court finds that these rates are too high. In similar cases involving ERISA default judgments, courts in this district have awarded lower hourly rates. See Upstate N.Y. Eng'rs Health Fund ex rel. Harrigan v. Ransom, No. 13-CV-1434, 2015 WL 145441, at *5 (N.D.N.Y. Jan. 12, 2015) ("[T]he prevailing rates in the community [are] $210 per hour for experence[d] attorneys and $80 per hour for paralegals."); I.B.E.W. Local 910 Welfare, Annuity & Pension Funds v. Grayco Elec., Inc., No. 12-CV-652, 2013 WL 495638, at *4 (N.D.N.Y. Feb. 7, 2013) (awarding hourly rates of $210 for experienced attorneys and $80 for paralegals). Therefore, the Court grants attorneys fees at a rate of $210 per hour for attorneys and $80 for paralegals for a total award of $17,714.13 in costs and fees.

---

[5] The cited page numbers for the Second Clark Affidavit refer to those generated by the Court's electronic filing system ("ECF").

> e. Audit Fees

Plaintiffs also request audit fees of $17,179.25. Dkt. No. 24-10 ("Dooley Affidavit") ¶ 13. "Requests for audit fees are 'generally determined by utilizing the same standards the court applies in awarding attorneys' fees.'" Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co., 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008) (quoting King v. Unique Rigging Corp., No. 01-CV-3797, 2006 WL 3335011, at *5 (E.D.N.Y. Oct. 27, 2006)).

Here, Plaintiffs provide an affidavit from Timothy Dooley, whose auditing firm conducted a payroll audit of South Buffalo to determine the amount of contributions and deductions owed to Plaintiffs for the period of January 1, 2012, through May 31, 2016. Dooley Aff. ¶ 4. Although Plaintiffs attach an exhibit listing the number of hours worked by the auditing firm and the rate per hour, there is no information as to the activities performed during that time. Id. Ex. C. Thus, the Court has no way to determine whether $17,179.25 is a reasonable fee and Plaintiffs' request for audit fees is denied. See Teamsters Local 814, 545 F. Supp. 2d at 269–70 (denying a request for audit fees where the plaintiffs provided invoices stating the hours spent and the amount charged but not the activities performed).

> 2. *Damages under LMRA*

Plaintiffs also request $10,944.50 in damages under LMRA. Second Mem. at 13. In particular, Plaintiffs seek interest and liquidated damages related to the untimely payments made by South Buffalo before Plaintiffs filed this action. Id. ERISA mandates the award of interest and liquidated damages only for contributions that are unpaid at the time of suit. Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp., 258 F.3d 645, 654 (7th Cir. 2001); Iron Workers Dist. Council & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators &

10

Erectors, Inc., 68 F.3d 1502, 1508 (2d Cir. 1995). Plaintiffs can, however, claim interest and liquidated damages for South Buffalo's untimely payments under LMRA. See Operating Eng'rs Local 139, 258 F.3d at 654 (finding that late payments "violated the terms of the plan, thus entitling the fund to enforce the plan's provisions imposing interest and liquidated damages on delinquent contributions"); Finkel v. INS Elec. Servs. Inc., No. 06-CV-4862, 2008 WL 941482, at * 5 (E.D.N.Y. Apr. 4, 2008) ("Although plaintiff has no right under ERISA to seek damages for those delinquent contributions that were paid prior to the suit being filed . . . the LMRA provides a statutory basis for recovering damages for those untimely contributions in violation of the CBA.").

Here, Plaintiffs have adequately alleged that South Buffalo made late payments in violation of the CBAs. Compl. ¶¶ 34–36. After reviewing the applicable rates of interest and liquidated damages provisions, Second Mem. at 12–13, the Court finds that Plaintiffs are entitled to $3,536.44 in interest and $7,361.80 in liquidated damages for late payments made prior to the commencement of this action.

### 3. *Injunctive Relief*

In the Second Default Motion, Plaintiffs seek multiple forms of injunctive relief as to South Buffalo. In particular, they request an order compelling South Buffalo to submit to an audit and a broader injunction directing South Buffalo to comply with its contractual obligations. Second Mem. at 18–21.

"When a plaintiff moves for a preliminary injunction on a motion for default judgment, injunctive relief may be granted where 'the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an

11

injunction.'" Gesualdi v. Mech. Insulation Inc., No. 14-CV-724, 2015 WL 729728, at *13 (E.D.N.Y. Feb. 18, 2015) (quoting Finkel v. Universal Sec. Sys., Inc., No. 10-CV-4520, 2011 WL 5402070, at *11 (E.D.N.Y. Sept. 9, 2011)). Here, the first requirement is satisfied because, under ERISA, a court may award in addition to monetary damages "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E).

As for the second requirement, Plaintiffs must also establish that an injunction is necessary because they face irreparable harm in the absence of an injunction, and they must demonstrate the absence of an adequate remedy at law. Gesualdi, 2015 WL 729728, at *13. Here, Plaintiffs fail to make such a showing. "Courts have held injunctive relief to be an appropriate remedy in ERISA disputes where the defendant 'intends to frustrate any judgment . . . or show "contempt for the judicial process."'" La Barbera v. Cab II Enters., Inc., No. 08-CV-3648, 2009 WL 2447498, at *9 (E.D.N.Y. Aug. 10, 2009) (quoting King v. Nelco Indus. Inc., No. 96-CV-4177, 1996 WL 629564 (E.D.N.Y. Oct. 23, 1996)). In this case, South Buffalo does not appear to intend to frustrate any judgment or show contempt for the judicial process. Although South Buffalo has defaulted, it made a payment of $76,892.07 after this action was initiated. Second Mem. at 8. Additionally, Plaintiffs conducted two audits (in April and June 2016), both of which South Buffalo appears to have cooperated with. Id.; Dooley Aff. Finally, although Plaintiffs suggest that South Buffalo "did not timely remit reports and contributions after this action was filed," Plaintiffs do not provide any additional details demonstrating that South Buffalo has been uncooperative in Plaintiffs' attempts to conduct an audit. Second Mem. at 23. Therefore, Plaintiffs motion for injunctive relief is denied.

**B. The Paolinis**

*1. Contributions and Deductions*

Plaintiffs also name the Paolinis, who were "officer[s], controlling shareholder[s], manager[s], and/or director[s] of South Buffalo," as defendants in their individual capacities. Compl. ¶¶ 16–17. Plaintiffs assert that the Paolinis breached their fiduciary obligations and are therefore personally liable for the unpaid contributions and deductions. First Mem. at 9. "A fiduciary that unlawfully withholds plan assets is 'personally liable to make good to such plan any losses to the plan.'" Bricklayers & Allied Craftworkers Local 2, Albany N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186 (2d Cir. 2015) (quoting 29 U.S.C. § 1109(a)). In order to establish that an individual is personally liable as a fiduciary, a plaintiff must prove "both that (1) the unpaid contributions were plan assets and (2) [the individual] exercised a level of control over those assets sufficient to make him a fiduciary." In re Halpin, 556 F.3d 286, 289 (2d Cir. 2009).

First, "[i]n the absence of provisions to the contrary in the relevant plan documents, unpaid contributions are not assets of the plan." Id. Here, however, Plaintiffs' Trust Agreements provide that outstanding and withheld contributions constitute plan assets. Dkt. Nos. 20-4 ("Harrigan Affidavit") ¶ 15, 20-6 ("Fanning Affidavit") ¶ 5, 20-8 ("Ross Affidavit") at 27. Second, Plaintiffs assert that the Paolinis "had managerial discretion and control over [South Buffalo], . . . exercised control over money due and owing to the Plaintiffs, and diverted Plaintiffs' trust assets to purposes other than purposes of the Plaintiffs." Dkt. No. 20-2 ("First Clark Affidavit") ¶ 11. Accepting Plaintiffs' uncontested factual allegations as true, Plaintiffs have demonstrated that the Paolinis were fiduciaries under ERISA, and that they breached their fiduciary duty. As fiduciaries, the Paolinis are required to "make good to [the] plan any losses

13

resulting from [their] breach." 29 U.S.C. § 1109(a). Therefore, the Paolinis are responsible for withheld assets.

### 2. *Prejudgment Interest*

Additionally, a fiduciary in her individual capacity may also be liable for prejudgment interest on withheld contributions. Moulton, 779 F.3d at 190. Prejudgment interest is intended to serve "as compensation for the use of money withheld" and to put "the plan in the position it would have occupied but for the breach." Diduck v. Kaszyski & Sons Contractors, Inc., 974 F. 2d 270, 286 (2d Cir. 1992), abrogated on other grounds by Gerosa v. Savasta & Co., Inc., 329 F.3d 317 (2d Cir. 2003). Therefore, prejudgment interest is calculated by comparing "what the plan earned during the time in question and what it would have earned had the money lost due to the breach been available." Id. In calculating lost investment income, the burden is on the defendant to show that the plan would not have placed the money in its most profitable plausible investment. Id.

Here, Plaintiffs calculate that, based on the rates applicable to each fund, Dkt. No. 20-3 ("First St. Fleur Affidavit") ¶ 11, the Paolinis owe $630.96 for lost investment income on late and withheld payments, Mem. at 13. But Plaintiffs' calculations are based on lost investment income for withheld payments that they assert in their First Default Motion. Because the Court is instead awarding a different amount of damages for withheld payments—one that also includes withheld payments identified in the Second Default Motion—the Court declines to award prejudgment interest against the Paolinis at this time. Plaintiffs may, however, file a motion to amend this judgment within twenty-eight (28) days to include prejudgment interest against the Paolinis, and Plaintiffs must provide documentation supporting their calculation of

interest.

### 3. Attorneys Fees and Costs

Under 29 U.S.C. § 1131(g)(1), in an ERISA action for breach of fiduciary duty, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." A court may award attorneys' fees only to a plaintiff who has achieved "some degree of success on the merits." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 254 (2010); see also Donachie v. Liberty Life Assurance Co. of Boston, 745 F.3d 41, 46 (2d Cir. 2014) ("After Hardt, whether a plaintiff has obtained some degree of success on the merits is the sole factor that a court *must* consider in exercising its discretion."). While a may consider other factors, the Court finds that Plaintiffs are the prevailing parties and are entitled to attorneys' fees as to the Paolinis.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED,** that Plaintiffs' First Default Motion (Dkt. No. 20) and Second Default Motion (Dkt. Nos. 24, 25) are **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that Plaintiffs are awarded $200,117.83 plus post-judgment interest at the rate pursuant to 28 U.S.C. § 1961 against defendant South Buffalo Electric, Inc., consisting of: (1) $171,459.20 in unpaid contributions and deductions, (2) $10,944.50 in interest and liquidated damages under for late payments under the LMRA, and (3) $17,714.13 in attorneys's fees and costs; and it is further

**ORDERED**, that Plaintiffs may file a motion to amend this judgment within **twenty-eight (28) days** of this Memorandum-Decision and Order to include the following, as to South

Buffalo: (1) unpaid contributions and deductions from July 23, 2015 through December 2015, (2) interest on withheld payments, and (3) liquidated damages; and it is further

**ORDERED**, that of the $200,117.83 award against South Buffalo, the Paolinis are jointly and severally liable for $189,173.33 plus post-judgment interest at the rate pursuant to 28 U.S.C. § 1961, consisting of: (1) $171,459.20 in unpaid contributions and deductions, and (2) $17,714.13 in attorneys' fees and costs; and it is further

**ORDERED**, that Plaintiffs may file a motion to amend this judgment within **twenty-eight (28) days** of this Memorandum-Decision and Order to include the following, as to the Paolinis: (1) unpaid contributions and deductions from July 23, 2015 through December 2015, and (2) prejudgment interest on withheld payments; and it is further

**ORDERED**, that Plaintiffs' request for injunctive relief is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: March 29, 2017
Albany, New York

Lawrence E. Kahn
U.S. District Judge