UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UPSTATE NEW YORK ENGINEERS
HEALTH FUND, *et al.*,

                        Plaintiffs,

    -against-                               5:15-CV-903 (LEK/TWD)

SOUTH BUFFALO ELECTRIC, INC.,
*et al.*,

                        Defendants.

## DECISION AND ORDER

**I.    INTRODUCTION**

This matter returns to the Court on a motion for reconsideration filed by plaintiffs Upstate New York Engineers Health Fund, Upstate New York Engineers Pension Fund, Upstate New York Engineers S.U.B. Fund, Upstate New York Engineers Training Fund, Operating Engineers Local 17 Training Fund, Central Pension Fund of the International Union of Operating Engineers and Participating Employers, and the International Union of Operating Engineers, Local Union No. 17. Dkt. Nos. 29 ("Motion"), 29-1 ("Clark Affidavit"), 29-2 ("Memorandum"). Plaintiffs request reconsideration of the Court's March 29, 2017 memorandum-decision and order partially granting Plaintiffs' motions for default judgment. Dkt. No. 27 ("March Order"); see also Dkt. Nos. 20 ("Default Motion"), 24 ("Second Default Motion"). For the following reasons, Plaintiffs' Motion is granted in part and denied in part.

**II.    BACKGROUND**

The Court assumes the parties' familiarity with the facts and history of this case and

recites only those facts necessary to the resolution of Plaintiff's Motion. For further background, reference is made to the March Order.

Defendant South Buffalo Electric, Inc. is a New York corporation, and defendants Arnold A. and Arnold J. Paolini are officers and shareholders of South Buffalo. Plaintiffs commenced this action on July 23, 2015, Dkt. No. 1 ("Complaint"), and Defendants did not answer or otherwise move in response to the Complaint, Docket. The Complaint sought monetary and injunctive relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. Compl. On October 6, 2015, Plaintiffs requested entry of default as to all Defendants, Dkt. No. 7, which the Clerk of the Court granted on October 7, 2015, Dkt. No. 9. Plaintiffs filed a motion for default judgment under Rule 55 of the Federal Rules of Civil Procedure on August 26, 2016. First Default Mot.; see also Dkt. No. 20-1 ("First Memorandum").

Plaintiffs' First Default Motion was filed against the Paolinis and not against South Buffalo, but Plaintiffs submitted a second motion for default judgment as to South Buffalo on November 1, 2016. Second Default Mot.; see also Dkt. No. 24-1 ("Second Memorandum"). Defendants did not oppose either motion for default judgment or otherwise appear in this action. On March 29, 2017, the Court granted in part and denied in part Plaintiffs' motions. Mar. Order at 15–16.

Plaintiffs offer four grounds for reconsideration. Mem. at 4–5. First, Plaintiffs claim the Court mistakenly reduced their damages from unpaid contributions and deductions by $28,716.87. Id. at 10–12. Second, Plaintiffs assert that the Court erred in its calculation of interest and liquidated damages as a result of the reduction in unpaid contributions and

2

deductions. Id. at 4; see also Clark Aff. ¶¶ 7–9. Third, Plaintiffs argue that the Court erred in denying their request for an injunction to obtain an audit from South Buffalo. Mem. at 13–16. Finally, Plaintiffs assert that the Court's fee award was unreasonably low compared to awards given by other courts in the Northern District of New York. Id. at 17–22.

## III. LEGAL STANDARD

A motion for reconsideration may be granted where there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)). "The standard for granting a motion for reconsideration 'is strict and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" Advanced Fiber Techs. Tr. v. J&L Fiber Servs., Inc., 751 F. Supp. 2d 348, 382–83 (N.D.N.Y. 2010) (Kahn, J.) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)). "[R]econsideration 'should not be granted where the moving party seeks solely to relitigate an issue already decided.'" Id. at 383 (quoting Shrader, 70 F.3d at 257).

## IV. DISCUSSION

### A. Unpaid Contributions and Deductions

Plaintiffs first argue that the Court erred in declining to award $200,176.07 in contributions and deductions for the period of January 1, 2012 through September 30, 2016. Mem. at 8–13. In its March Order, the Court limited Plaintiffs "to the $141,988.49 in unpaid

3

contributions and deductions for the period of July 2014 through March 2015 that they alleged in the Complaint." Mar. Order at 6. The Court explained that Plaintiffs were limited to the damages pleaded in their Complaint and "may not now demand $170,709.35 in contributions and deductions for the period of January 1, 2012, through December 31, 2015." Id. The Court also stated that the Plaintiffs could not "seek additional damages for the time period before this action was filed." Id. The Court agrees with Plaintiffs that these conclusions were error.

It is well established in the Second Circuit that "plan trustees may collect the unpaid contributions and the actual costs incurred in collecting unpaid contributions . . . [because] ERISA's purpose is to secure guaranteed pension *payments* to participants by insuring the honest administration of financing sound plans." Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit & Training Funds v. B.B.L. Constructors, Inc., 825 F. Supp. 13, 17 (N.D.N.Y. 1993). Generally, plaintiffs "may not recover an amount greater than that sought in their [complaint or] amended complaint." Bricklayers Ins. & Welfare Fund v. Golden Vale Constr., Inc., No. 06-CV-1028, 2007 WL 3232244, at *7 (E.D.N.Y. Oct. 31, 2007); see also Bd. of Trs. of United Union Roofers v. Best Roofing of N.J., Inc., No. 12-CV-1655, 2014 WL 1311809, at *6 (E.D.N.Y. Mar. 31, 2014) ("Plaintiff may not now seek higher amounts for the periods that were already outstanding at the time the complaint was filed."). But there is an important exception to this general rule. Courts have awarded sums greater than the total requested in a complaint when the complaint provides notice to defendants that the amount of damages sought is subject to increase. E.g., Mason Tenders Dist. Council Welfare Fund v. I.M.I. Const. Corp., No. 99-CV-12105, 2004 WL 1700615, at *2 (S.D.N.Y. July 30, 2004) ("Plaintiffs here should not be limited to the dollar figures in the complaint because . . . the complaint . . .

4

specifically refers to other (unquantified) amounts to be determined by subsequent audit [of the defendant's records]."); B.B.L. Constructors, 825 F. Supp. at 16 (finding that plaintiff provided adequate notice where defendant had "timely received a copy of the reply affidavit which claimed the additional monies at variance with plaintiffs' complaint and also clearly explained the reasons for the variance"). Cf. Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007) ("By limiting damages to what is specified in the 'demand for judgment,' the rule ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer."); Best Roofing, 2014 WL 1311809, at *6 (denying a request for unpaid benefits contributions because "[n]othing in the complaint nor in plaintiffs' submissions requesting entry of default judgment suggest that plaintiffs would seek damages that would be so many times higher" than those alleged in the complaint). Thus, notice is a key factor to determining whether a plaintiff may seek damage above those pleaded in its complaint. If defendants have adequate notice that actual damages may differ from those originally sought, ERISA plaintiffs can obtain more money than they initially request in their complaint.

In the March Order, the Court followed the general rule, holding that "Plaintiffs may not, however, seek additional damages for the time period before this action was filed." Mar. Order at 6. On reconsideration, the Court concludes that Plaintiffs need not be limited to the $141,988.49 explicitly requested in the Complaint, Compl. ¶¶ 32, 42, 43, because the Complaint itself put Defendants on notice of the possibility of a larger damages figure. Plaintiffs based their $141,988.49 request on South Buffalo's remittance reports, id. ¶ 30, but explicitly requested an audit of Defendants' records to assess the accuracy of those reports, id. ¶¶ 38–43. "In the event

5

[that the audit revealed that Defendants] ha[d] not properly submitted accurate reports," Plaintiffs alleged that they were entitled to "any and all contributions that are determined to be due." Id. ¶ 43. Because the Complaint "specifically refers to other (unquantified) amounts to be determined by subsequent audit," Mason Tenders, 2004 WL 1700615, at *2, Defendants were on notice that they faced potential damages above $141,988.49, and thus Plaintiffs are not limited to this amount. Additionally, Defendants "clearly had notice of the varying amount in [P]laintiffs' [Second Default Motion]," B.B.L. Constructors, 825 F. Supp. at 17, which sought $200,176.07 in contributions and deductions after two audits had been conducted to cover the period from January 1, 2012 through May 31, 2016, Second Mem. at 8–9. "Therefore, 'the amended [motion for] default judgment in the case at hand satisfies the notice principles Rule 54(c) seeks to protect.'" B.B.L. Constructors, 825 F. Supp. at 18 (quoting Fustok v. Conticommodity Services, Inc., 122 F.R.D. 151, 157 (S.D.N.Y. 1988)). The Court therefore modifies the March Order to award Plaintiffs $200,176.07 in unpaid contributions and deductions.

### B. Interest and Liquidated Damages Calculations

Under ERISA's theory for recovery of damages, the amount of unpaid contributions and deductions determines what the calculations are for both interest and liquidated damages. § 1132(g)(2). In the March Order, the Court denied Plaintiffs' requests for interest and liquidated damages because the requests "include[d] interest on unpaid contributions that [the Court concluded] Plaintiffs [were] not entitled to" and sought liquidated damages above the statutory limit. Mar. Order at 7–9. Because the Court mistakenly reduced the award for unpaid contributions and deductions in its prior order, Plaintiffs' requests for interest and liquidated damages were also erroneously denied. Now that Plaintiffs' award for unpaid contributions and

deductions has been correctly assessed at $200,176.07, the Court can reinstate Plaintiffs' requests for interest and liquidated damages based on that amount. The Court therefore awards Plaintiffs' requests from the Second Default Judgment for $46,926.64 in interest, and $70,888.82 in liquidated damages based on their request for $200,176.07 in unpaid contributions. Second Mem. at 8–9; see also Clark Aff. ¶¶ 7–8; Dkt. No. 24-3 ("St. Fleur Affidavit") ¶ 21.

In their Motion, Plaintiffs also challenge the Court's determination that there were inconsistencies between the affidavits and the Second Memorandum which led the Court to deny Plaintiffs' requests for interest and liquidated damages. Mar. Order at 7–9. The Court declined to grant Plaintiffs interest and liquidated damages claims due to confusion surrounding the amount alleged in the Second Default Motion versus the amounts listed in the St. Fleur Affidavit. Id. at 7 n.4, 8. See also Second Mem. at 9; St. Fleur Aff. ¶ 21. Plaintiffs have explained that the inconsistencies were due to the fact that the St. Fleur Affidavit combined the unpaid and late paid contribution amounts into a single calculation of total debt owed by South Buffalo, while the Second Memorandum separated the unpaid and late paid amounts and placed all late paid amounts in a different section of the memo. Clark Aff. ¶¶ 7–8. The Court is uncertain why Plaintiffs separated late payments for interest and liquidated damages from its total ERISA claim and instead placed these amounts in the LMRA section of its brief. Nonetheless, the Court concludes that Plaintiffs have adequately explained the inconsistencies in these amounts and grants Plaintiffs' requests for interest and liquidated damages based on the $200,176.07 figure requested in their Second Default Motion as stated above.

## C. Injunctive Relief

Plaintiffs argue that the Court erroneously refused to issue an order compelling South Buffalo to submit to an audit because they are contractually entitled to obtain audits from South Buffalo, and that Plaintiffs should not have to show irreparable harm to obtain such an audit. Mem. at 13–16. The Court is not persuaded. It is well established that ERISA plaintiffs are entitled to an injunction when they face "recalcitrant ERISA defendants . . . who both failed to make contributions and cooperate with an audit." Upstate N.Y. Eng'rs Health Fund by Harrigan v. DiPizio Constr. Co., No 14-CV-1539, 2017 WL 3016834, at *12 (N.D.N.Y. July 14, 2017) (quoting Sullivan v. Marble Unique Corp., No. 10-CV-3582, 2011 WL 5401987, at *14 (E.D.N.Y. Aug. 30, 2011)). Plaintiffs do not suggest that South Buffalo has exhibited such recalcitrance. Thus, they are not entitled to an injunction.

Plaintiffs cite several cases for the proposition that they are not required to show irreparable harm, but these cases involved defendants that refused to submit to requested audits. See Cent. States, Southeast & Southwest Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 563–65 (1985) (finding that because "Central Transport refused to allow the requested audit," the employers were obligated by their trust agreement to allow an audit to take place); Trs. of the Sheetmetal Workers Nat'l Pension Fund v. Steel & Duct Fabrication, Inc., 124 F. Supp. 3d 187, 198 (E.D.N.Y. 2015) ("[T]he defendants' refusal to submit to an audit triggered . . . plaintiffs' right to seek and obtain an order ordering defendants to produce their books and records for an audit."). There is no evidence that South Buffalo resisted the two audits already conducted by Plaintiffs, and the Court reiterates its determination that "South Buffalo does not appear to intend to frustrate any judgment or show contempt for the judicial process."

Mar. Order at 12. Plaintiffs have failed to show that they face irreparable harm and their request for an injunction was correctly denied.

### D. Attorney's Fees

Finally, Plaintiffs challenge the Court's decision to award $210 an hour for attorney services and $80 an hour for paralegal services. Mem. at 17–22. Plaintiffs point the Court to several ERISA and LMRA cases where courts awarded higher fees. Id. at 20–21. But the Court finds that recent ERISA default judgment cases support the conclusion that $210 and $80 an hour for attorney and paralegal services, respectively, are appropriate rates under the "presumptively reasonable fee" standard employed in this District. Mar. Order at 9; see also DiPizio Constr. Co., 2017 WL 3016834, at *9–10 (awarding $210 an hour for attorneys and $80 an hour for paralegals in an ERISA case); Eng'rs Joint Welfare Fund v. Western N.Y. Contractors, Inc., No. 09-CV-417, 2010 WL 2682224, at *4 (N.D.N.Y. July 2, 2010) (same). The Court acknowledges that there may be a spectrum of reasonable fee awards in this District, but Plaintiffs have failed to demonstrate that the award in this case was clearly erroneous. Thus, Plaintiffs' request for higher fees was properly denied.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' Motion for Reconsideration (Dkt. No. 29) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that Plaintiffs are awarded $346,650.16 plus post-judgment interest at the rate pursuant to 28 U.S.C. § 1961 against defendant South Buffalo Electric, Inc., consisting of (1) $200,176.07 in unpaid contributions and deductions, (2) $46,926.64 in interest due to unpaid

and late paid contributions, (3) $70,888.82 in liquidated damages due to unpaid and late paid contributions, (4) $10,944.50 in interest and liquidated damages for late payments under the LMRA, and (5) $17,714.13 in attorney's fees and costs; and it is further

**ORDERED**, that of the $346,650.16 awarded against South Buffalo, the Paolinis are jointly and severally liable for $217,890.20 plus post-judgment interest at the rate pursuant to 28 U.S.C. § 1961, consisting of (1) $200,176.07 in unpaid contributions and deductions, and (2) $17,714.13 in attorney's fees and costs; and it is further

**ORDERED**, that Plaintiffs' request for injunctive relief is **DENIED**; and it is further

**ORDERED**, that Plaintiffs' request for additional attorney's fees and costs is **DENIED**; and it is further

**ORDERED**, that Plaintiffs may file supplemental affidavits **within thirty days** of this Decision and Order as to the following: (1) unpaid contributions and deductions from July 23, 2015 through December 2015, and (2) prejudgment interest on withheld payments; and it is further

**ORDERED**, that the Clerk of the Court shall enter an amended judgment in accordance with this Decision and Order; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:    October 06, 2017
               Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge